**STATE of Missouri, Plaintiff–Respondent,**

v.

**Rufus LANG, Defendant–Appellant.**

**Rufus LANG, Plaintiff–Appellant.**

v.

**STATE of Missouri, Defendant–Respondent.**

Nos. 54626, 57044.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 28, 1990.

---

**1.** This is the period for which the notes from Schleicher had been outstanding.

Henry B. Robertson, Marc B. Fried, St. Louis, for Lang.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for State.

SATZ, Presiding Judge.

A jury convicted defendant, Rufus Lang, of burglary, first degree. § 569.160 RSMo 1986. The court found defendant to be a class X offender, § 558.019 RSMo 1986,

and sentenced him to twenty years imprisonment.

Defendant appeals his conviction and sentence and also appeals the denial of his post-conviction motion under Rule 29.15. We reverse and remand his conviction and sentence and, in turn, find his Rule 29.15 appeal to be moot.

On appeal, defendant asserts several trial court errors. One is dispositive. The trial court erred in failing to sustain defendant's challenge for cause to a venireman, Mr. Frank Smith.

■■■ Defendant exercised a peremptory challenge to remove Mr. Smith. The Missouri Constitution, Art. 1, § 18(a), entitles a defendant to a full panel of qualified jurors before he is required to expend his peremptory challenges. *E.g., State v. Stewart,* 692 S.W.2d 295, 298 (Mo. banc 1985).[1] Failure to grant a proper challenge for cause is reversible error. *Id.* We review the trial court's rulings on challenges for cause only for abuse of discretion. *State v. Lovell,* 506 S.W.2d 441, 444 (Mo. banc 1974).

■■ Defendant contends that Mr. Smith should have been stricken for cause because he "indicated" he would require defendant to show some proof of innocence. From our review, Mr. Smith, at best, was equivocal in answering the question of who bears the burden of proof.

During her voir dire, defendant's counsel asked whether the members of the venire panel understood that in a criminal trial the state was required to prove all the elements of the crime charged and whether they understood that, if the state does not do so, the jury must find the defendant not guilty. Following these questions, defendant's counsel addressed more specific questions to Mr. Smith. The following exchange is indicative of the entire colloquy between the two of them.

. . . . .

[MS. FERGUSON]: Mr. Smith, did you understand about the different elements of the crime?

MR. SMITH: Sure.

MISS FERGUSON: Okay. If you were chosen to sit on the jury who would have to prove the case to you?

MR. SMITH: Who would have to prove it to me?

MISS FERGUSON: Yes. Who has the burden of proof?

MR. SMITH: I still can't understand. You said who would have the burden of proof?

MISS FERGUSON: Yes.

MR. SMITH: Well, I would say he would have to be proven innocent.

MISS FERGUSON: So, I believe what you are saying then is that I would have to present enough evidence to prove that he was innocent in the case. You are going to start off thinking, well, he is probably guilty. We are going to have to bring you some evidence to show that he is not guilty. Is that what you are saying?

MR. SMITH: Well, he is guilty until proven innocent.

MISS FERGUSON: Okay. Did you hear the conversation that I had earlier with some of the other jurors?

MR. SMITH: Yes.

MISS FERGUSON: So, you are saying that he has started off—you believe him to be guilty. He starts out guilty until we prove him innocent?

MR. SMITH: Yes.

MISS FERGUSON: Thank you. May we approach the bench, Your Honor?

THE COURT: Yes, you may.

. . . . .

[At the bench conference, the court denied Ms. Ferguson's request to remove

---

**1.** Loss of a peremptory challenge because of the trial court's erroneous refusal to excuse a prospective juror for cause does not violate the federal constitutional right to trial by impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90 (1988).

As stated above, Missouri affords a defendant greater protection. *E.g. State v. Wacaser,* 794 S.W.2d 190, 193–194 (Mo. banc., 1990).

Mr. Smith for cause and suggested she continue her voir dire of him.]

. . . . .

MISS FERGUSON: [If] the judge instructed you that [the state] must bring in evidence in the case and that I, as the defense lawyer, do not have to bring any evidence before you, could you follow that instruction?

MR. SMITH: Well, I would say that you both would have to bring in evidence.

MISS FERGUSON: Okay. And if I didn't bring in any evidence and then the State brings in all of the evidence, would that mean automatically that you would have to vote guilty?

MR. SMITH: You are saying if you have no evidence. You are trying to prove him innocent.

MISS FERGUSON: Well, the State must prove him guilty. I know it's a very difficult concept, but he starts out on this level innocent; okay?

And until the State brings enough evidence to put on top of him to lower him down, maybe we could say that it is what the burden is.

Think of burden as something physical that the State must bring in. If they don't do that, if they don't bring in enough evidence, then, he still stays here at not guilty or innocent unless they bring in enough evidence to put it on top of him and bring him down to guilty; okay? Does that make sense?

MR. SMITH: Yeah.

MISS FERGUSON: Okay. Now, would you be able to follow that instruction of law?

MR. SMITH: Sure.

MISS FERGUSON: Okay. And would you hold it against me or against Mr. Lang if you heard no evidence from the defense?

MR. SMITH: I would say so.

MISS FERGUSON: Okay. If the judge instructed you that you are not allowed to do that, would you have trouble following that instruction?

MR. SMITH: No.

. . . . .

MISS FERGUSON: I am asking you if you are going to require me to bring in some evidence in the case?

MR. SMITH: Yes, I would.

MISS FERGUSON: And if the judge instructed you that is not the way the law is, you would have trouble following that?

MR. SMITH: I don't think so.

. . . . .

MISS FERGUSON: Well, I am asking you if you could follow that given your feelings. You have told me many times that you would expect us to have witnesses, to have evidence. Even given those feelings, could you still follow the law if it was otherwise? That is what I am asking.

MR. SMITH: Yes.

MISS FERGUSON: Okay. You could put all of that out of your mind?

MR. SMITH: Yes.

MISS FERGUSON: Okay. You are sure of that?

MR. SMITH: Sure.

MISS FERGUSON: Okay. And if I don't have any witnesses or any evidence, you going to hold that against me or my client?

MR. SMITH: Well, because you would have to prove him—you have to prove him innocent.

MISS FERGUSON: Okay. And you are saying he starts out not guilty, and I would have to prove him innocent?

MR. SMITH: Well, what I am saying; okay? He was caught doing a crime.

The record before us does not show that either the state or the trial court conducted a separate voir dire of Mr. Smith.

 To state the obvious, we must review a trial court's failure to sustain a challenge for cause on a case by case basis. *State v. Stewart, supra,* 692 S.W.2d at 298 (Mo. banc 1985). General guidelines for this review, however, are well established. "Absence of an independent examination by the trial court", as here, "justifies a more searching review by an appellate court of the challenged juror's qualifica-

tions." *State v. Linger,* 726 S.W.2d 728, 734 (Mo. banc 1987). "Errors in the exclusion of potential jurors should always be made on the side of caution." *State v. Carter,* 544 S.W.2d 334, 338 (Mo.App.1976).

■ More specifically relevant here, it is a cardinal principle of criminal law that the state bears the burden of proof, and a venireperson who cannot unequivocally follow that principle must be excused for cause. *See, e.g., State v. Stewart, supra,* 692 S.W.2d at 299 (Mo. banc 1985) and *State v. Hopkins,* 687 S.W.2d 188, 191 (Mo. banc 1985); *see also, State v. Griffin,* 756 S.W.2d 475, 480 (Mo. banc 1988).

We have read all of the voir dire of Mr. Smith. At times, he did respond to questions to say he would follow the court's instructions and would not require defendant to present evidence. Just as often, if not more often, Mr. Smith said he would require defendant to present evidence. This equivocation required him to be stricken when challenged for cause. *Stewart* and *Hopkins, supra.*

■ We address one other issue which may recur on retrial. Defendant contends the trial court erred in denying his motion to suppress his pre-trial statement. We disagree.

Defendant does not cite specific transcript references in either his Statement of Facts or Argument. Apparently, defendant contends that the pre-trial statement he made to a Detective Hill was involuntary because, defendant contends, he responded to Hill's questions while he was in pain in the hospital, and Hill did not ask any doctor "what medication, if any, [defendant] was under the affect of at the time [defendant was interrogated]".

Defendant was charged with the burglary of a food shop. After breaking and entering the food shop sometime between 7:00 and 8:00 p.m., defendant was shot by the shop's manager. Defendant was taken to the hospital sometime between 8:00 and 8:30 p.m.

At approximately 10:00 p.m. that night, Detective Hill arrived at the hospital to question defendant. Hill asked and re-ceived permission from a doctor to interrogate defendant. He questioned defendant while defendant "was lying on [a] gurney in the hallway", apparently, near the "emergency room" of the hospital.

Hill advised defendant of his *Miranda* rights, and defendant said he understood them. Hill then questioned defendant about the burglary. He told Hill he and three others attempted to enter the shop through the rear and side doors. They were unsuccessful. Defendant then "pried an air conditioner out of [a] wall", pushed it into the building, entered the building himself and, shortly thereafter, was shot.

According to Hill, during the interrogation, defendant "was normal, attentive." "He didn't seem to be drugged or anything. He was quite awake." There was nothing "unusual about his speech or his speech patterns". There was nothing "unusual about his eyes or his eye pupils". At the end of the interrogation, Hill's "partner" asked defendant about "other crimes". At that point, defendant said "he was in pain and ... would talk to [the detectives] later about those other crimes."

■ Once defendant properly questioned the voluntariness of his pre-trial statement, the state had the burden of proving defendant made the statement voluntarily. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). This burden of proof, however, is the preponderance of the evidence, not beyond a reasonable doubt. *Id.*

Detective Hill's testimony about defendant's vital signs was more than sufficient to carry the state's burden that defendant was rational during the interrogation. And, if the pain did affect defendant's thought processes, it did not do so until the end of the interrogation. Moreover, Detective Hill did ask a doctor for permission to interrogate defendant. It is sheer speculation, denying common sense, to assume the doctor would have granted permission if defendant had been made irrational by medication.

■ More important, perhaps, "coercive police activity is a necessary predicate to the finding that a confession is not 'volun-

tary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986). The fact that defendant was injured and treated at a hospital, without more, does not prohibit the use of his statement. *State v. Luster,* 750 S.W.2d 474, 479 (Mo.App.1988). "The standard for determining voluntariness is whether there was coercive police activity; the defendant's mental condition, 'by itself and apart from its relation to official coercion', should never end an inquiry into voluntariness." *Id.* There was no indication of "coercive" police activity here.

Judgment reversed and remanded.

SMITH and GRIMM, JJ., concur.