STATE of Missouri, Plaintiff–
Respondent,

v.

Michael EDMONSON, Defendant–
Appellant.

No. 17685.

Missouri Court of Appeals,
Southern District,
Division Two.

March 11, 1992.

Motion for Rehearing or Transfer
Denied March 30, 1992.

Brad B. Baker, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Presiding Judge.

The defendant Michael Edmonson appeals his conviction, by a jury, of rape, a violation of § 566.030.3, RSMo Supp.1990,[1] and his sentence to five years' imprisonment in accordance with the jury's recommendation.

Two issues presented on appeal are whether the trial court prejudicially erred in overruling the defendant's challenge for cause of a venireperson because of her alleged equivocal answer about possible partiality toward the testimony of a police officer and whether a jury instruction defining "proof beyond a reasonable doubt" allowed the jury to convict the defendant on a degree of proof below that required

by due process. Finding no reversible error, we affirm.

## FACTS

Briefly, the facts relating to the offense follow. On Saturday, November 17, 1990, the victim, age 13 years, met the defendant on Main Street in Joplin. The victim knew the defendant as a friend of her brother. After they met, the victim went with the defendant to his apartment. After arriving at the apartment, the defendant had sexual intercourse with the victim.

Later that night the victim was taken to a hospital by her mother. There an emergency room doctor examined the victim, using a standard rape kit.

Pertinent facts surrounding juror qualifications follow. During voir dire the state asked the jury panel if anyone knew Officer Higginbotham. Prospective juror, June Ames, responded that she worked for the municipal court and knew who Higginbotham was but did not know him personally. No further questions were directed to Ames at that time. Later, during voir dire by the defendant's counsel, venireman Dorsey, a member of the highway patrol for 16½ years, indicated that he would probably tend to believe the testimony of a law enforcement officer over somebody else if there was a discrepancy. Defense counsel Maples then asked:

MR. MAPLES: Anybody else who feels the same way as Mr. Dorsey? ... [No hands] Ms. Ames, you work down at the Joplin municipal court?

VENIREWOMAN AMES: Yes.

The defendant's counsel then elicited from Ames that her job brought her into daily contact with Joplin police officers and that she had developed a respect for police officers in general. The following then occurred.

MR. MAPLES: If the believability of a police officer became an issue in this case, do you think you would tend at all to believe the testimony of a police offi-

---

**1.** Section 566.030.3, RSMo Supp.1990, provides: "A person commits the crime of rape if he has sexual intercourse with another person to whom he is not married who is less than fourteen years old."

cer rather than somebody else if it came down to that?

VENIREWOMAN AMES: Probably would.

MR. MAPLES: And especially if it were a real issue?

VENIREWOMAN AMES: Yes.

MR. MAPLES: Or if there were an issue perhaps of procedure as to what should have been done or what was done, you would kind of tend to go with the police officer, other things being equal; is that right?

VENIREWOMAN AMES: Depending on the circumstances, yes.

MR. MAPLES: I'm not saying you wouldn't consider the circumstances, but you would lean toward the policeman; is that right?

VENIREWOMAN AMES: Probably.

MR. MAPLES: Okay, and, again, I don't suppose that's something that you just may not have thought about it in those terms before, but you really didn't just decide that this morning, did you?

VENIREWOMAN AMES: No, I didn't.

MR. MAPLES: Is that kind of a long-held opinion like Mr. Dorsey's?

VENIREWOMAN AMES: Yes.

No follow-up questions were asked of Ames by the state or by the trial court.

Later, when the defendant challenged prospective juror Ames "for cause," the trial court rejected the challenge, saying:

THE COURT: Well, I'm going to overrule your motion on June Ames, juror number 30. I've had a chance to observe this woman's credibility throughout your questioning, and the Court's observation of her credibility was that she could be quite fair in this case. And it would seem to me that upon your very leading questions, she reluctantly agreed with what you were saying. But this woman has been employed as a clerk in the municipal court for less than a year, and I think that for me to find that she would be prejudiced in this case for one side or the other would be stretching the matter considerably.

The defendant then used a preemptory challenge to remove Ames from the jury panel.

Four Joplin police officers, including officer Higginbotham, testified to their respective roles in maintaining a chain of custody for the rape kit. Higginbotham's role consisted of receiving the rape kit at the hospital from an attending physician or his nurse, marking it with his signature, and taking it to the police station where he deposited it in an evidence locker.

Ralph Willis, a serologist, was called to testify concerning his analysis of the rape kit. A defense objection to his testimony was overruled. The basis for the objection was that a proper chain of custody for the rape kit had not been established because of (a) the lack of testimony from the nurse who received the kit from the examining physician and then handed it to officer Higginbotham who was standing outside the emergency room door, and (b) the lack of testimony from an evidence officer who served between officer Nelson's retirement and the time when officer Holden assumed the position. Willis then testified that he analyzed the rape kit and identified the presence of sperm cells on a microscopic examination of the vaginal smears.

Regarding the instruction issue, the jury was given an instruction number 4, a faithful reproduction of MAI–CR3d 302.04, a pattern instruction that includes a definition of "proof beyond a reasonable doubt."

## OVERRULING CHALLENGE FOR CAUSE

In Point I the defendant contends that the trial court committed reversible error in overruling his challenge for cause as to juror Ames. He argues that Ames expressed a bias for the credibility of police officers and when his for-cause challenge was denied, he was denied a full panel of qualified jurors from which to make his peremptory challenges.

■ The principles governing jury selection in this state are well established. Missouri law amply supports the right of an accused to a full panel of qualified jurors before he is required to make peremp-

tory challenges. *State v. Wacaser,* 794 S.W.2d 190, 193 (Mo. banc 1990); *State v. Hopkins,* 687 S.W.2d 188, 190 (Mo. banc 1985); *State v. Gary,* 822 S.W.2d 448, 451 (Mo.App.1991). A venireman who expresses a bias in favor of the credibility of police officers in general, or of a police officer expected to testify for the state, is disqualified to serve as a juror. *State v. Schnick,* 819 S.W.2d 330, 333 (Mo. banc 1991); *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984); *State v. Williams,* 643 S.W.2d 832, 834 (Mo.App.1982). Denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes error. *Hopkins,* 687 S.W.2d at 190. And, if a venireman is biased, it is error not to excuse him for cause even though the venireman does not actually serve. *Schnick,* 819 S.W.2d at 334; *Gary,* 822 S.W.2d at 451, 452.

■ Other applicable principles include the following. In reviewing a trial court's ruling on a for-cause challenge to a venireman, each case must be judged on its own facts. *State v. Holland,* 719 S.W.2d 453 (Mo. banc 1986). A trial court's determination of a venireman's qualifications necessarily involves a judgment based on observation of the venireman's demeanor. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Because a judge is in a better position to make that determination than an appellate court is from the cold record, doubts as to the trial court's findings are resolved in its favor. *Id.*

■ However, the broad discretion accorded the trial court in its rulings is predicated in part upon the requirement that the trial judge carefully consider the responses of the prospective jurors on voir dire. *State v. Ealy,* 624 S.W.2d 490, 493 (Mo. App.1981). Where a venireman gives equivocal answers which reveal uncertainty as to his ability to be impartial, the trial judge has a duty to further question the juror concerning his possible bias or prejudice. *Id.* Failure of the trial judge to make independent inquiry of the venireman in such instance may undercut any basis

for the trial judge's exercise of discretion and constitute reversible error. *State v. Lovell,* 506 S.W.2d 441, 443 (Mo. banc 1974); *State v. Land,* 478 S.W.2d 290, 292–93 (Mo.1972). Without an independent examination, a more searching review by the appellate court is justified. *Draper,* 675 S.W.2d at 865.

■ Finally, we observe that even though a venireman expresses a partiality in favor of the credibility of police officers and the venireman is not rehabilitated by a more searching inquiry by the trial court, there remains circumstances where there may be no prejudice to the defendant. *Schnick,* 819 S.W.2d at 333; *Draper,* 675 S.W.2d at 865.

■ Here, the challenged juror, June Ames, stated that she had developed a respect for policemen in general from her on-the-job contact with them. That is not a basis for challenging her for cause. *State v. Eaton,* 504 S.W.2d 12, 17 (Mo.1973); *State v. Boyd,* 643 S.W.2d 825, 829 (Mo. App.1982).

■ However, under defense counsel questioning, her answers became more specific and indicated a bias toward the credibility of police officers. This is found in her admissions that she "probably would" tend to believe a police officer rather than somebody else and would probably "lean" toward believing the police officer, especially if it were a "real issue." Similar remarks by prospective jurors who are not thereafter rehabilitated have been consistently viewed in Missouri as indicating a bias that disqualifies such person from jury service. *Schnick,* 819 S.W.2d 330; *Draper,* 675 S.W.2d 863; *Gary,* 822 S.W.2d at 452, and *Ealy,* 624 S.W.2d 490.

Here, the trial court made no attempt to clarify Ames's position by questioning her further about her ability to be a fair and impartial juror. The absence of follow-up questioning of Ames on this issue undercuts the basis for the trial court's exercise of discretion. *Lovell,* 506 S.W.2d at 443; *Land,* 478 S.W.2d at 292–93. Ames should have been excused. *Schnick,* 819 S.W.2d

330; *Gary,* 822 S.W.2d at 451, and *Ealy,* 624 S.W.2d 490.

In overruling the defendant's challenge to juror Ames, the trial court mentioned it "had ... observed [her] credibility throughout your [defense counsel's] questioning, and the Court's observation of her credibility was that she could be quite fair in this case." Obviously, the trial court had a superior ability to observe her demeanor and judge Ames's credibility. However, the trial court's finding that she was credible is not related to her ability to be fair. If the trial court had followed up by eliciting clarifying answers from Ames which removed the uncertainty concerning her qualifications, we would defer to the trial court's determination that the clarifying answers were credible and that she would be fair.

In numerous Missouri cases, no error has been found where the trial court overruled a challenge for cause to a venireman who initially expressed a tendency to believe a police officer over other witnesses, but who upon further questioning indicated an ability to evaluate all testimony by the same standard and accord both sides a fair trial.

*Ealy,* 624 S.W.2d at 493.

Such further inquiry did not happen here. Granting the trial court the deference it is due in determining credibility, Ames's answers demonstrated her bias, not her fairness and impartiality.

■ In ruling the for-cause challenge to Ames the trial court recognized that problems existed regarding her partiality. However, it attempted to dispose of the problem by finding that "upon your [defense counsel] very leading questions, she reluctantly agreed with what you were saying." We agree that the questions were leading. We do not question the characterization of Ames's answers as being given reluctantly. However, such observations do not detract from the importance of her answers in so far as they reveal her bias toward the credibility of police officers. Her remarks demonstrated her inability to fairly weigh testimony in this case. *Ealy,* 624 S.W.2d at 494. Once the trial court

recognizes the possibility of juror bias or prejudice, deference to the action of the trial court is no longer in the picture. *Land,* 478 S.W.2d at 293; *State v. Holliman,* 529 S.W.2d 932, 939–40 (Mo.App. 1975).

The state suggests that any possible bias found from Ames's answers to specific questions is refuted by her lack of response to certain general questions posed to the jury panel. We disagree. One such general question was: "Any reason whatsoever that I may not have touched on or concern that would affect your ability to remain objective, any reason whatsoever?" The other question, asked after venireman Dorsey said he would favor police testimony, was: "Anybody else who feels the same way as Mr. Dorsey?" No jury panel member, including Ames, responded to either of these questions. Such lack of response to general questions is not conclusive on the issue of bias. *Draper,* 675 S.W.2d at 865.

■ This is especially true where, as here, the bias is suggested by the juror's response to specific questions after general questions brought no response. *State v. Lang,* 795 S.W.2d 598, 600–02 (Mo.App. 1990). When presented with the general questions, Ames may have silently concluded that she could or would divest herself of any bias if selected. However, when confronted with specific questions, Ames, with admirable candor, admitted that she would probably lean toward believing the police officers. The trial court is required to consider the responses of the individual jurors on voir dire in order to be able to make a factual determination as to the competency of an individual challenged juror. *Holliman,* 529 S.W.2d at 939. The decision of the judge should be based on facts stated by the juror and not on conclusions of the juror himself as to his ability to act impartially. *Lovell,* 506 S.W.2d at 444; *State v. Carter,* 544 S.W.2d 334, 338 (Mo.App.1976).

Even if Ames's failure to respond affirmatively to the two general questions indicated her conclusion that she can be fair, her subsequent answers to specific questions indicated a bias that disqualified her. Faced with such equivocal answers, the

trial court erred when it refused to strike Ames when she was challenged for cause. *Schnick*, 819 S.W.2d at 333; *Hopkins*, 687 S.W.2d at 191; *Lang*, 795 S.W.2d at 602.

Despite the trial court's error in overruling the defendant's for-cause challenge to Ames, reversal is not required because the defendant was not prejudiced by the error. In *Draper*, 675 S.W.d at 865, and very recently in *Schnick*, 819 S.W.2d at 333, our supreme court recited circumstances in which there may be no prejudice to a defendant for failure to exclude a prospective juror who is biased in favor of police officer credibility. Specifically, *Draper* and *Schnick* point with approval to (1) *State v. Butler*, 660 S.W.2d 225, 227 (Mo.App.1983), and *State v. Harrell*, 637 S.W.2d 752, 757 (Mo.App.1982), where defendants were held not to have been prejudiced because the testifying police officers did not provide any elements of the state's case; (2) *State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972), and *State v. Daniels*, 629 S.W.2d 627, 630 (Mo.App.1982), where the more important evidence came from other witnesses; and (3) *Smith*, 649 S.W.2d at 424, where the police officer did not testify to any truly contested issue.

The circumstances suggested in *Draper* as demonstrating absence of prejudice are present here. The testimony of the four policemen was confined to their role in maintaining a chain of custody for the rape kit. Their testimony did not provide any of the elements of the state's case nor any of the important evidence. The state's case requires proof of sexual intercourse with the unmarried 13–year–old victim. Those elements and any evidence that could be characterized as "important" were fully established by the testimony of the victim. The rape kit evidence, including the chain of custody testimony, provided no element of the crime nor was such evidence "essential" to the state's case. This, because in a statutory rape case a victim's uncorroborated testimony is generally sufficient. *See State v. Schaal*, 806 S.W.2d 659, 667 (Mo. banc 1991).

Finally, the chain of custody evidence by the officers was not truly contested at trial.

The defendant did object to the introduction of the rape kit because of an alleged improper chain of custody, but the objection was not based upon the officers' testimony or the procedure they followed in handling the evidence. Rather, the defendant's objection focused on the state's failure to call additional witnesses to establish the chain of custody. Specifically, he argued that a proper chain of custody had not been established because of the absence of testimony from the emergency room nurse and lack of testimony from the evidence officer who served between Nelson's retirement and Holden's assuming the position. That objection was overruled and the rape kit was admitted. From this record it is obvious that the credibility of the four officers was not a significant issue at trial.

The defendant argues that even if credibility of the police officers was not an issue, he was prejudiced by the trial court's refusal to strike June Ames from the panel. He relies on the following language from *Schnick*, 819 S.W.2d at 334, to support his argument.

> [T]he fact that Fraker and Roe [law enforcement officers] gave testimony that was uncontradicted, unimpeached and consistent with other testimony does not mean the weight of the testimony and credibility of the witnesses was not at issue. The credibility of witnesses and weight of evidence is always a question for the jury to decide.

However, the defendant's reliance on *Schnick* is misplaced. The *Schnick* court characterized the testimony of Fraker and Roe as "important when compared to other evidence because it established essential elements of the state's case and involved contested issues." *Id.* at 333. It recited that involvement as follows:

> Fraker was the first officer to arrive at the Schnick farm. Both Fraker and Roe testified in some detail to observations made at the Schnick and Buckner homes on the day of the murders. Fraker identified photographs of the slain Buckner children. At one point Fraker apparently became somewhat emotional

as he gave a description of what he saw at the Buckner home.

Roe and another officer left the Schnick residence and were the first to arrive at the Buckner residence. Roe collected *physical evidence from both the* Schnick and Buckner homes. He related his conversation with Schnick at the hospital regarding the events leading up to the homicide.

... Fraker's testimony established the date, location, approximate time and condition of the bodies when they were found. Fraker confirmed testimony of other persons arriving at about the same time and identified photographs of the victims.

Roe not only confirmed testimony of Fraker and other officers, he added evidence establishing a hostile relationship between defendant on one hand and Julie Schnick and the Buckner family on the other. Thus, Roe's testimony, more than any other single witness's, established a motive for defendant to commit the homicides.

*Id.* at 333–34.

In stark contrast with the police officers' testimony in *Schnick,* the testimony of the four policemen in the instant case was unimportant when compared to other evidence. Here, the police officers' testimony did not establish essential elements of the state's case and did not involve contested issues. *Schnick* does not control. We reject the arguments in Point I and hold that the defendant was not prejudiced by the trial court's refusal to sustain the defendant's challenge of June Ames for cause.

### INSTRUCTION DEFINING "REASONABLE DOUBT"

In Point II the defendant asserts the trial court erred in giving, as Instruction 4, MAI–CR3d 302.04 which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." He contends the definition allowed the jury to convict him "based upon a degree of proof that was below that required by the due process clause." He relies upon *Cage v. Louisiana,* 498 U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), where the United States Supreme Court reaffirmed the "beyond a reasonable doubt" standard necessary to convict an accused.

With candor, the defendant admits in his argument:

> Appellant acknowledges that the Missouri Supreme Court has recently reaffirmed its decision in *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v. Reginald Griffin,* [818 S.W.2d 278 (Mo. banc 1991)]. Appellant maintains his objection to the current reasonable doubt instruction, however, in anticipation that the federal courts will find that MAI–CR3d 302.04 does not meet the requirements of due process as enunciated in *Cage v. Louisiana, supra.*

The defendant's point is governed by *Griffin* and *Antwine;* not by *Cage. State v. Vanzant,* 814 S.W.2d 705, 708 (Mo.App. 1991). Accordingly, it is denied.

Judgment affirmed.

MAUS and MONTGOMERY, JJ., concur.