STATE of Missouri, Respondent,

v.

Kevin R. NOLIN, Appellant.

Kevin R. NOLIN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17068, 17616.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 1992.

Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

After jury trial, Kevin R. Nolin (Defendant) was convicted of assault in the first degree, § 565.050 [1] and burglary in the first degree, § 569.160. He was sentenced to a total of thirty years. Defendant filed a direct appeal from those convictions and a Rule 29.15 [2] motion. Following an evidentiary hearing, the motion was denied and Defendant appealed from that denial. The appeals have been consolidated pursuant to Rule 29.15(*l*).

Defendant presents two points relied on. The first relates to the criminal trial and does not challenge the sufficiency of the evidence. We only mention the evidence as it relates to the issue Defendant raises.

Defendant's first point asserts that his statement to Deputy Sheriff Tatum was inadmissible because he "was not able to give a knowing and intelligent waiver of his rights to counsel and to remain silent, due to his physical condition" after surgical removal of a bullet and the effects of medication given him.

The background of Defendant's statement results from the following events: On July 8, 1989, Lance Bond took Colleen Jackson (the ex-wife of Defendant) and her two children to a swimming party. One of the children, William, age four, is the son of Defendant. Bond, Ms. Jackson, and the children returned to Bond's home where they retired to bed around 9:30 p.m. that evening. About 3:00 a.m. the next morning Bond and Ms. Jackson were awakened by someone pounding on the front door. Bond answered the door and saw Defendant outside. Immediately Bond closed the door, but Defendant kicked the door open and promptly administered a beating to Bond. These actions of Defendant resulted in the charges of assault and burglary. Ms. Jackson soon was involved in an affray with Defendant who eventually grabbed his son and fled. Ms. Jackson smelled intoxicants on Defendant's breath during the altercation. The Neosho Police Department was called, and the above information was given to the investigating officer along with a description of Defendant's vehicle.

Deputy Sheriff Toler soon became involved in efforts to apprehend Defendant. He noticed a vehicle matching the description of Defendant's car parked at a convenience store. The deputy drove behind the store building and later saw Defendant approach his car. Defendant ignored the officer's command to stop and drove away at a high rate of speed. The deputy pursued and eventually fired two shots with his revolver at defendant. Finally, the deputy's third shot struck Defendant which forced him to stop, whereupon he was arrested. At the scene, Deputy Sheriff Tatum read Defendant his Miranda rights

1. Statutory references are to RSMo 1986 unless otherwise indicated.

2. Rule references are to Missouri Rules of Court (1991).

from a printed card. Defendant indicated he understood those rights but desired to talk with an attorney. The conversation ended at that time.

Promptly Defendant was taken to Sale Hospital where a bullet was surgically removed from his neck. Defendant was given an anesthetic before surgery and pain medication afterwards. The record does not reflect the type nor quantity of drugs given to Defendant.

Defendant was taken to the sheriff's office from the hospital around 7:30 a.m., July 9, 1989. About the same time Deputy Tatum also arrived. He encountered Sheriff Doerge talking to Defendant. The sheriff told Defendant that Deputy Tatum would take his statement if he wanted to give one. Defendant indicated he desired to talk to Tatum. Tatum read Defendant his Miranda rights, and Defendant signed a printed Miranda waiver form.[3] Defendant did not appear to be intoxicated or drugged at the time of his statement. He appeared to be in a normal state of mind, i.e., he was coherent and did not slur his speech. Defendant told Tatum, "I lost it. I lost it. I really went off on him.... Lance Bond. Is the little b_____ gonna live? I don't feel any remorse at all. This s___ has been going on for three years." The statement was given at 7:37 a.m. after Defendant had been continuously at Sale Hospital since approximately 3:45 a.m.

Defendant filed a motion to suppress his statement. At the suppression hearing Defendant testified his signature appears on the printed waiver of Miranda rights form, that he remembered speaking to Deputy Tatum at the sheriff's office, but recalled nothing more. The remaining evidence of Defendant's statement, as noted above, was uncontradicted.

At the conclusion of the suppression hearing the court made no findings and simply overruled the motion. Defendant's statement was later received in evidence over his objection.

Upon the initial submission of this appeal, the record failed to show "with unmis-

takable clarity" that Defendant's statement was voluntarily made as required by *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). We followed the practice suggested by *State v. Glenn*, 429 S.W.2d 225, 237–38 (Mo. banc 1968), and requested the trial court make appropriate findings on the record. Thereafter, the trial court made the requested findings based upon the evidence in the record. Those findings were filed here, becoming part of the record. As necessary, later reference will be made to the trial court's findings.

■ In reviewing the ruling on Defendant's motion to suppress, the "question is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily or involuntarily made." *State v. Stokes*, 710 S.W.2d 424, 428–29 (Mo.App.1986). "The reviewing court is free to disregard contrary evidence and inferences, and is to affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its findings." *Id.* at 426.

■ When a defendant challenges the admission of a statement on the grounds of involuntariness, the trial court must make a clear cut determination of voluntariness before the statement can be considered by the finder of fact. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). "Missouri practice contemplates a full hearing on the voluntariness question held outside the presence of the jury, at which the burden of proof is on the state to show by a preponderance of the evidence that the confession was voluntary." *State v. Weston*, 769 S.W.2d 164, 166 (Mo.App. 1989). "Once the trial court has held the required evidentiary hearing, the record must show, with sufficient clarity, the trial court's conclusion that the defendant's confession was voluntary. The record must 'show the judge's conclusion in this regard (voluntariness) and his findings upon the underlying facts may be express or ascertainable from the record.'" *Id.*, citing

---

3. Defendant has not favored us with this exhibit. Therefore, we are unaware of its contents.

However, no issue is made that Defendant did not receive the proper Miranda warning.

*Jackson v. Denno, supra,* 378 U.S. at 378, 84 S.Ct. at 1781.

■ The test for voluntariness is "whether the totality of the circumstances deprived defendant of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Buckles,* 636 S.W.2d 914, 923 (Mo. banc 1982). See *State v. Feltrop,* 803 S.W.2d 1, 12 (Mo. banc 1991).

Here, the trial court found:

(a) Defendant's Miranda rights were read to him at the time of his arrest. After Defendant's release from the hospital he was again advised of his rights by Deputy Tatum. Defendant then signed a written waiver of his rights (Defendant's Exhibit 21) and his waiver was "intelligently and understandably made."

(b) Defendant was coherent and his speech was not slurred at the time of his statement. No force or coercion was used to obtain Defendant's statement which was made voluntarily.

(c) Defendant was physically able to give a statement. The medication administered during and after the surgical removal of the bullet did not render his confession incompetent.

Defendant's contention has recently been ruled adverse to him in *State v. Lang,* 795 S.W.2d 598 (Mo.App.1990), where the facts are similar to the instant case. There, defendant contended his incriminating statement was involuntary because he gave answers to Detective Hill while he was in pain in the hospital, and Hill had failed to ask any doctor about medication given defendant. Detective Hill only asked a doctor for permission to question defendant. Defendant was hospitalized after being shot during a burglary which occurred between 7:00 p.m. and 8:00 p.m. Defendant was taken to the hospital between 8:00 p.m. and 8:30 p.m. where he was questioned around 10:00 p.m. At that time he was lying on a gurney in a hallway near the emergency room. Hill testified defendant was normal, attentive, quite awake and did not seem to be drugged. There was nothing unusual about his speech, speech patterns, his eyes or eye pupils. The Court determined that the testimony concerning defendant's vital signs "was more than sufficient to carry the state's burden that defendant was rational during the interrogation." *Id.* at 602. Furthermore, the Court said: "It is sheer speculation, denying common sense, to assume the doctor would have granted permission if defendant had been made irrational by medication." *Id.* Also see *State v. Luster,* 750 S.W.2d 474, 479 (Mo.App.1988), where the fact that defendant was injured and treated at a hospital, without more, did not prohibit the use of his statement.

When comparing the facts of *Lang* to the instant case, it is apparent Defendant's contention has no merit. He was apparently treated for a minor bullet wound and released from the hospital after an approximate three-hour stay. No interrogation took place in the hospital. Like *Lang,* it defies common sense to assume that the doctor released Defendant from the hospital while irrational from medication. Deputy Tatum testified, without contradiction, that Defendant gave no appearance of being drugged or intoxicated, appeared to be in a normal state of mind, was coherent and did not slur his speech. Deputy Tatum's testimony was more than sufficient to carry the State's burden that Defendant was rational during the interrogation. The evidence at the suppression hearing was uncontradicted and clearly is sufficient to sustain the trial court's findings.

Finally, no violation of the U.S. Constitution appears because of the application of *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), to this case. There the U.S. Supreme Court said: "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522. Here, the record is devoid of any coercive police activity in regard to Defendant. His statement was voluntarily made after he knowingly and intelligently waived his Miranda rights. Point I is denied.

Defendant's last point deals with denial of his Rule 29.15 motion. He claims error because his post-conviction counsel violated Rule 29.15(e), (f), and (h) by failing to ascertain whether sufficient facts existed to support the allegations in Defendant's pro se and amended motions. Defendant further complains his post-conviction counsel abandoned him by failure to present any credible evidence on Defendant's claims for post-conviction relief.

■ The Missouri Supreme Court has repeatedly held that ineffective assistance of counsel in a post-conviction relief proceeding "is not cognizable" in that proceeding. *Pollard v. State*, 807 S.W.2d 498, 502 (Mo. banc 1991); *Sloan v. State*, 779 S.W.2d 580, 583 (Mo. banc 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990). Point denied.

Judgment affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.