**STATE of Missouri, Respondent,**

v.

**James H. HIGDON, Appellant.**

**James H. HIGDON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 17051, 17815.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 16, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 8, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Chief Judge.

James H. Higdon (defendant) was convicted, following a jury trial, of the offenses of forcible sodomy, § 566.060,[1] and forcible rape, § 566.030. Following his convictions, defendant filed a Rule 29.15 motion for post-conviction relief. An amended motion was filed and, after evidentiary hearing, denied. Defendant appeals the convictions in his criminal case (No. 17051) and the order denying his amended Rule 29.15 motion (No. 17815). The appeals were consolidated as required by Rule 29.15(*l*). This court affirms.

Defendant met C.H. the evening of July 29, 1988, at Graffiti's, a bar in Springfield, Missouri. He invited her to go with him and two friends for breakfast at a nearby restaurant. He asked if he could ride to the restaurant with her. She agreed. When they arrived at the restaurant, defendant went to a booth that would hold only two people. Defendant and C.H. sat down. No one joined them.

When C.H. and defendant left the restaurant, his friends were in the parking lot. Defendant told C.H. that he did not want to wait until his friends finished eating. He asked her to take him to his car. C.H. agreed. She drove toward Graffiti's, but defendant told her that his car was not there. He told her it was at another location. The driving time to the other location was an hour or more. C.H. refused to take defendant there.

C.H. took defendant back to the restaurant parking lot. He told her that his friends' car was gone. He told her that he had other friends who lived at a nearby apartment complex and C.H. proceeded to take him there. On the way to the apartment, defendant began yelling at the occupants in another car. When C.H. stopped at a stoplight, defendant got out of her car and continued shouting. C.H. tried to drive away, leaving defendant standing in the street, but he pulled himself back into her car. Defendant told C.H., "You do that again, bitch, and I'll kill you." He then apologized and told her he had not meant to say that.

When C.H. got to the apartment complex, the same car was there that had been at the stoplight when defendant had gotten out of her car. Defendant again got out of C.H.'s car and shouted at the occupants in the other car. They shouted back. C.H.

---

1. References to statutes are to RSMo 1986.

told one of the occupants in the other car that she wanted defendant out of her car. When the occupants of the other car started to come to her assistance, defendant "got back in the car and slammed the door and put his forearm against [C.H.'s] throat and he said: Drive, bitch."

C.H. drove away as directed by defendant. She pulled into a driveway to permit him to get out of her car. She "put the car into park." Defendant grabbed the keys from the ignition of C.H.'s car. She attempted to get the keys back by grabbing his hair and telling him to give them to her. She described what happened:

Q. [by prosecuting attorney] You said you had grabbed his hair. What else if anything did you do?

A. [by C.H.] I pulled his hair and, you know, it was long and it was in my hand and I said give me the keys, give me the damn keys right now and get out of my car.

Q. And what if anything did Mr. Higdon do at that point?

A. He sat there and he had this grin on his face and then he took his arm and he, he had the keyes [sic] in one hand, and he knocked my throat back with one hand, and then he grabbed my hair back here.

Q. Did he say anything to you?

A. He said you think you're a real tough bitch, don't you.

Q. What if anything happened then?

A. Then he reached in his pocket like he had something in there, and he said I've got a knife and I ought to just cut your throat right now.

.    .    .    .    .

Q. All right. What if anything did you do?

A. He had my hair back pulling on it and he pulled my shirt up and was biting me.

Q. All right. You say he pulled your shirt up, what kind of a shirt were you wearing at that time?

A. It was like a turtleneck-type, and it had short sleeves here and it was—it was just a pullover.

Q. All right. When you say he was biting you, where was he biting you?

A. On my chest.

Q. Any particular place on your chest?

A. On my breasts.

Q. The way—when he was biting you, was he biting you in an affectionate way or how was he biting you?

A. Until they bled through the skin, I mean, bite.

Defendant hit C.H. in the face with his fist. He made her get out of her car. She screamed and tried to get away. As C.H. screamed, defendant was slapping her in the face. C.H. described what occurred:

I was screaming and he kept beating me in the face and telling me [to] shut my mouth or he'd kill me. And he pulled my clothes off. And then when he went to take his clothes off he got his jeans off down to his ankles and I made a run for it but he tackled me.

Defendant sodomized C.H. and then raped her. He threatened to kill her, then told her he was going to take her with him. He had her get dressed. He took her and her car to a place in Christian County, the Linden River access area. He again sodomized and raped her. Defendant drove "down a bunch of country roads." He eventually stopped the car in the middle of a road, left its engine running and turned off the headlights. Defendant gathered his clothes, pulled C.H. to the driver's side of the car, got out of the car and "just started walking" away. C.H. drove away.

C.H. found her way back to Springfield. She went to a friend's house, then to a police station where she reported what had occurred. Her face was beaten and swollen, her breasts bitten and bleeding, and her lips were swollen and cut.

Defendant's first point on appeal is directed to the state having elicited "evidence pertaining to the second instance of rape and sodomy, . . . at the Linden Lure area in Christian County." Defendant acknowledges that this issue was not preserved for appeal because objection was not made to the applicable testimony at trial, but asserts that admission of the evidence was "plain error."

In addition to asserting that the trial court committed plain error by permitting testimony about the second rape and sodomy, defendant contends, with respect to the appeal of the denial of his Rule 29.15 motion, that he was denied effective assistance of counsel in the criminal trial because his trial attorney failed to object to that testimony. Defendant also complains that his post-conviction motion counsel was ineffective because the post-conviction counsel failed to allege, in the amended Rule 29.15 motion, "that trial counsel was ineffective for failing to object to the admission at trial of evidence regarding the Linden Lure incident."

Although it is arguable that defendant's first "point relied on" is anything but a brief and concise statement of actions of the trial court for which appellate review is sought, resolve of its first prong squelches the remaining two issues that defendant has attempted to address in that point.[2] Such convolution is not recommended as a means of complying with Rule 30.06.[3]

The first prong in defendant's first point on appeal is his contention that the trial court committed plain error by permitting testimony about the second rape and sodomy that occurred at the Linden River access area, or, as described by defendant, the "Linden Lure area," in Christian County. Defendant argues that the testimony about those occurrences amounted to evidence that related to crimes other than the ones for which he was being tried.

Defendant correctly states as "the general rule" that admission of evidence relating to crimes other than the one charged is not admissible. *See State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984). However, as explained in *State v. King,* 588 S.W.2d 147 (Mo.App.1979):

[A] well recognized exception makes evidence of other crimes admissible when that evidence "tend(s) to establish ... a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other ...". *See e.g., State v. Kornegger,* 363 Mo. 968, 255 S.W.2d 765, 768 (1953). Equally well recognized, in our state, is the parallel exception which permits proof of another crime, if the other crime is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other, *e.g., State v. Shumate,* 478 S.W.2d 328, 330–331 (Mo.1972), *State v. Taylor,* 320 Mo. 417, 8 S.W.2d 29, 35 (1928). Under this latter exception, the state is permitted to paint a complete and coherent picture of the crime charged and it is not required to sift and separate the evidence and exclude the testimony tending to prove the crime for which defendant is not on trial. *State v. Sinovich,* 329 Mo. 909, 46 S.W.2d 877, 880 (1931); *see State v. Torrence,* 519 S.W.2d 360 (Mo.App.1975). [Footnote omitted.]

*Id.* at 150.

*King* is similar to this case. The defendant in *King* was charged and convicted of sodomy and assault to do great bodily harm. Its facts were recited as follows:

[T]he evidence shows that the defendant, while driving a car in the City of St. Louis with a male passenger, stopped the car at Ninth and Soulard, and the prosecutrix approached the car, mistakenly believing defendant and his passenger to be friends of her children. Defendant's passenger pulled the prosecutrix into the backseat of the car and, from that time until they were arrested in St. Charles County, defendant and his passenger took turns sodomizing the prosecutrix and, also, beating her for refusing to be a compliant victim. In sequential detail: defendant's companion first sodomized

---

**2.** Defendant has undertaken to attack the admission of certain testimony in his criminal trial; to challenge the effectiveness of his trial counsel, an issue reviewable by post-conviction motion; and to attack the effectiveness of his post-conviction counsel in a single point on appeal, his first "point relied on."

**3.** The typewritten "point relied on" covers more than one full page in the brief, not including an additional page of citations. Claims of error are attempted to be directed, in the one point on appeal, to both the direct appeal and the appeal of the Rule 29.15 motion.

the prosecutrix; defendant sodomized her; the companion struck her twice with his fists, then sodomized her; defendant sodomized her and struck her twice with his fists; and, just prior to the car being stopped by the St. Charles police, the companion again sodomized her and, at the same time, hit her repeatedly with his fists.

*Id.* at 149.

The defendant in *King* was tried in St. Charles County for the offenses of sodomy and assault that occurred just prior to his arrest. The defendant contended on appeal that it had been error to admit "evidence of his sodomizing the victim prior to the sodomy with which he was charged." *Id.* at 150. The court held:

The evidence ... clearly shows there was a single continuing transaction which began when the prosecutrix was dragged into defendant's car and ended when the car was stopped. Defendant's acts of sodomy were interrelated and inseparable facts of this single transaction.

. . . . .

Thus, the state was not required to segregate and choose between defendant's acts of sodomy, and proof of his prior sodomy was properly admitted.

*Id.* The court concluded that the evidence of the acts of sodomy other than the one charged was admissible under either of the two exceptions to the "general rule" regarding the admissibility of evidence of other crimes.

In *King,* as in this case, the issue of admissibility of the evidence of other crimes had not been preserved. Thus, *King* involved "plain error" review.[4] In that regard, the court stated:

The trial court did not commit plain error. To the contrary, it committed no error at all, because the evidence of the prior sodomy was admissible.

*Id.*

■ In this case, as in *King,* there was a continuing transaction that began when defendant physically forced the victim to drive him from the apartment complex to the area where he first raped and sodomized her. The transaction continued from that time until defendant left her and her car on a country road with the car's headlights off and its motor running. The taking of C.H. to the Linden River access area and defendant's commission of the second rape and sodomy were part of the continuing transaction. No error was committed, plain or otherwise, by the trial court's reception of the evidence of the second rape and sodomy.

There having been no error in admitting the evidence about which defendant has complained at trial, defendant's trial counsel was not ineffective in failing to object. "Counsel is not ineffective for failing to make meritless objections." *Taylor v. State,* 782 S.W.2d 741, 743 (Mo.App.1989).

■ Although it is not necessary to address the merits of the prong of defendant's first point on appeal that complained of the effectiveness of his post-conviction counsel, it should be noted that the attack on the competency of post-conviction counsel, in and of itself, was improper. A post-conviction proceeding may not be used to challenge effectiveness of post-conviction counsel. *See Pollard v. State,* 807 S.W.2d 498, 502 (Mo. banc), *cert. denied,* — U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). Defendant's first point is denied.

■ Defendant's second point contends that the trial court erred in instructing the jury as to the definition of reasonable doubt. The trial court submitted its Instruction No. 4 patterned after MAI–CR 3d 302.04. Defendant complains that "Instruction No. 4, in defining proof beyond a reasonable doubt as proof that leaves one 'firmly convinced' of the defendant's guilt, allowed the jury to convict [defendant] based on a quantum of proof that is less than 'beyond a reasonable doubt.'" Defendant relies on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), for this claim of error.

---

**4.** The court, in *King,* considered the issue of "plain error" by reason of Rule 27.20(c) (repealed 1–1–80). Rule 29.12(b) is substantially the same as prior Rule 27.20(c).

This court recently addressed the same claim as the one defendant now raises in *State v. Bogard*, 836 S.W.2d 87 (Mo.App. 1992), holding:

> A challenge to the MAI–CR3d 302.04 definition of *reasonable doubt* was raised and denied by the Missouri Supreme Court in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), and more recently in *State v. Griffin*, 818 S.W.2d 278 (Mo. banc 1991). The defendant's point is governed by *Griffin* and *Antwine*, not by *Cage*. *State v. Edmonson*, 827 S.W.2d 243, 249 (Mo.App.1992); *State v. Vanzant*, 814 S.W.2d 705, 708 (Mo.App. 1991).

*Id.* at 89.

The language and holding in *Bogard* is applicable here. Defendant's second point is denied. Defendant's convictions in No. 17051 are affirmed. The order dismissing defendant's Rule 29.15 motion in No. 17815 is affirmed.

CROW, P.J., and SHRUM, J., concur.