STATE of Missouri, Plaintiff–
Respondent,

v.

Donald M. WRIGHT, Defendant–
Appellant,

and

Donald M. WRIGHT, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18197, 20592.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 8, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 1996.

M. Elise Branyan, Asst. Public Defender, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Donald M. Wright (defendant) was charged and convicted, following a jury trial, of murder in the first degree, § 565.020,[1] and armed criminal action, § 571.015.1. He was sentenced to life imprisonment without eligibility for probation or parole for the murder offense and life imprisonment for the armed criminal action offense. Defendant thereafter filed a motion for post-conviction relief as permitted by Rule 29.15 that was denied after an evidentiary hearing.

Defendant appeals the judgment of conviction (No. 18197) and the order denying his Rule 29.15 motion (No. 20592). This court consolidated the appeals pursuant to Rule 29.15(*l*) as it existed on the date defendant's motion was filed. The judgment of conviction and the order denying the Rule 29.15 motion are affirmed.

■ Defendant's allegations of trial court error include a claim that the evidence was not sufficient to support the guilty verdicts in his criminal case. The evidence, for purposes of this court's review, is viewed in the light most favorable to the verdicts. *State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992). Evidence supporting the verdicts is regarded as true and contrary evidence is disregarded. *Id.* If reasonable persons could find defendant guilty on the basis of the evidence so considered, it is sufficient. *Id.*

On August 24, 1990, Larry Arnold met defendant at an apartment in Springfield, Missouri, where defendant was staying with friends. They made plans for the day. Arnold testified that they planned "[t]o do burglaries." When asked what he meant, Arnold explained, "Go and break into peoples' [sic] houses and steal their things."

Sometime before 2:00 p.m., Arnold took his girlfriend to work. He was driving her car. He and defendant went to Christian County to find houses to burglarize. They were looking for houses that were not near other

---

1. References to statutes are to RSMo 1986.

dwellings; houses at locations where they would not be seen. They wanted to steal guns, VCRs, televisions and jewelry because those items were "easy to sell and easy to take."

Defendant and Arnold entered three houses the afternoon of August 24. The first two burglaries were at the Steinert and Kreider residences. They stole a .22 rifle, a VCR and jewelry at the first; a VCR and jewelry at the second.

The third house belonged to Linda and Russell Haddow. They arrived about 4:00 p.m. Arnold drove into the driveway. There was a slope at the back of the house that led to the back door. Arnold parked the car on the slope, "backed it up on the slope" so it was headed away from the house.

Defendant got out of the car. He looked through the windows into the back of the house. He checked a sliding glass door. It was unlocked. He went inside.

Arnold got out of the car, put on gloves and entered the house. He and defendant went into the master bedroom at the back of the house. Arnold found guns in the closet of the bedroom and handed them to defendant. Defendant put the guns on the bed. They found a jewelry box above the bed with $2 bills in it. They threw it on the bed.

Arnold went to the living room area. He found a microwave and a television. He put the microwave on a table and went to another part of the house. He returned and saw a VCR behind the television. As Arnold picked up the VCR, defendant shouted that someone had come home. There was a truck outside that had not been there when they arrived.

Defendant picked up a gun from the bed and tried to load the gun with shells from a box that was on the bed. The shells would not fit in the gun. Defendant picked up another gun, opened the box of shells and tried to put them in the weapon.

Arnold started to go to a spare bedroom to hide but changed his mind. He decided to run out the door. As Arnold started toward the door, defendant came out of the master bedroom. Defendant was loading a gun. He

tried to hand Arnold the gun and said, "You kill him." Arnold said, "No."

Arnold dropped the VCR and remote control he was carrying and started to the kitchen to get to the door to leave the house. He was about to enter the kitchen when he saw Russell Haddow walking into the house through the sliding glass door carrying a lunch box and mail.

Defendant came around a corner with the gun. Arnold was at the back door. He turned and saw defendant pointing the gun at Haddow. As Arnold headed toward the car he heard a gunshot. He started the car's engine and was attempting to leave when defendant got to the car and climbed inside.

Arnold was asked the following questions and gave the following answers:

Q. [by the special prosecuting attorney] Did you ask the defendant whether or not he had shot Mr. Haddow?

A. Yes, I did.

Q. What did you ask him?

A. I asked him if he was dead.

Q. What did the defendant say?

A. He hoped so.

. . .

Q. Tell us whether or not you asked why he had shot him?

A. Yeah. I asked why he had to shoot him instead of doing something else, and so there wouldn't be no witnesses he stated back.

Linda Haddow returned to her home that afternoon around 5:15 or 5:20. As she drove up the driveway to the house she noticed the sliding glass door was open. When she entered the house through the open door, she saw her microwave sitting on the table. She saw Russell on the floor leaning against the kitchen sink. Mrs. Haddow went to her husband. She could not find a pulse. He was cold to her touch. She called a neighbor for assistance. The neighbor called an ambulance and came to the Haddow house. A short time later a deputy sheriff arrived.

Mrs. Haddow had not disturbed anything in the house after she called for assistance. There was a gun on the floor and a VCR on

the floor in the hallway. There were guns on the bed in the master bedroom—a .300 Savage lever action rifle, a .22 rifle and a .410 shotgun—and jewelry boxes and drawers thrown on the bed.

The gun that was on the floor was a bolt action .270 caliber rifle with a scope. Investigators found a hole in an antique ladle hanging by a kitchen window, a hole in a kitchen cabinet and two shatter marks or shatter-type holes in the window. They found a bullet fragment on top of the kitchen stove.

Two boxes of Winchester .270 ammunition were found in the bedroom. One box was full. The other had five rounds missing. One round was next to the box. One was jammed in a .300 Savage lever action rifle that was on the bed. Two rounds were on the floor inside a room used as a study. The remaining round was the one that had been fired.

### Point I

Defendant, for his first point on appeal, contends the trial court erred in denying his motion for acquittal filed at the close of the state's evidence and at the close of all evidence. He contends the evidence was not sufficient to support verdicts of murder in the first degree and armed criminal action because it failed to prove he knowingly killed Russell Haddow with premeditation and failed to prove he committed the offense through the use, assistance or aid of a deadly weapon.

■ Although defendant's allegation of trial court error is directed to the denial of two motions for judgment of acquittal, one made at the close of the state's evidence and one made at the close of all evidence, the only question applicable on appeal is whether it was error to deny the motion for acquittal at the close of all evidence. Defendant presented evidence in his own behalf. By doing so he waived any claim of error he could have

directed to the denial of his motion for acquittal at the close of the state's evidence. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992).

Defendant's challenge to the sufficiency of the evidence focuses on the testimony of Larry Arnold. He contends Arnold's testimony was not credible, thereby suggesting that it should be disregarded and, upon disregarding Arnold's testimony, defendant asserts the evidence was not sufficient for reasonable persons to find him guilty. He alleges that Larry Arnold testified in another case that he had "lied under oath" in defendant's trial.[2]

■ "Questions of credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury. *State v. Carter,* 670 S.W.2d 104, 108 (Mo.App.1984). It is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict." *State v. Nelson,* 818 S.W.2d 285, 288 (Mo.App.1991).

■ Larry Arnold testified in considerable detail concerning what occurred in the Haddow residence before Mr. Haddow arrived home and what transpired with respect to the shooting after Mr. Haddow came into the residence. The physical evidence accumulated by law enforcement officers at the scene of the shooting was consistent with Arnold's testimony. The evidence was sufficient for reasonable persons to have found defendant guilty of murder in the first degree and armed criminal action. Point I is denied.

### Point II

Defendant's second point is directed to the trial court's denial of a motion to dismiss the criminal charge against defendant or, alternatively, to not allow Larry Arnold to testify against defendant at trial. Point II alleges the trial court erred in denying the motion because both defendant and Arnold were

---

**2.** Defendant's brief does not identify specific testimony given by Arnold in this case concerning events at the Haddow residence that was later declared by him to be false. Defendant filed a copy of the transcript of Arnold's testimony in the later trial with this court. This court has

reviewed the copy of that transcript. That review disclosed no statement that specific testimony Arnold gave in this case concerning what occurred at the Haddow residence was untruthful.

represented by the same attorney for a period of time following their arrest.

◼ Defendant's motion was filed February 13, 1992 (along with 13 other motions), four weeks prior to trial. Although not entitled motion in limine or motion to suppress evidence, it was such a motion in that it sought, prior to the beginning of trial, dismissal of the charges against defendant or suppression of testimony by Larry Arnold. *See Rhodes v. Blair,* 919 S.W.2d 561, 563 (Mo.App.1996); *State v. Riggs,* 586 S.W.2d 447, 449 (Mo.App.1979).

◼ "A point relied on which is premised on the denial of a motion in limine presents nothing for appellate review. *Keith v. Burlington N., R.R. Co.,* 889 S.W.2d 911, 922 (Mo.App. S.D.1994). This is because the ruling of a motion in limine is interlocutory in nature and cannot, therefore, by itself, be reversible error. *Id.*" *Rhodes, supra.* This court may, nevertheless, review the issue defendant attempts to raise for plain error. *See State v. Allbritton,* 660 S.W.2d 322, 328 (Mo.App.1983). It will do so.

◼ Defendant's complaint is that he was represented for a short time by the same attorney who represented Larry Arnold; that the trial court's denial of his request to dismiss the charges against him or to refuse to permit Larry Arnold to testify because of that representation was error. The question this court considers is whether, as a result of that representation, manifest injustice occurred. Rule 29.12(b). To be entitled to relief, there must have been an actual conflict of interest that adversely affected counsel's performance on defendant's behalf. *Odom v. State,* 783 S.W.2d 486, 488 (Mo.App.1990); *Hopson v. State,* 728 S.W.2d 276, 277 (Mo. App.1987).

◼ Defendant was arrested September 3, 1990. Larry Arnold was arrested September 4, 1990. A Christian County associate circuit judge directed the Greene County public defender's office to provide counsel for defendant and Arnold. Assistant Public Defender James R. Schumacher interviewed defendant on September 4 and appeared with him for arraignment in the associate circuit judge division of the Circuit Court of Christian County. Mr. Schumacher later interviewed Larry Arnold.

On October 22, 1990, attorneys assigned to the capital litigation section of the public defender's office entered their appearances on behalf of defendant.[3] Schumacher continued representing Larry Arnold.

Larry Arnold testified at defendant's trial. He was asked if an agreement was reached concerning his testimony against defendant. He testified that there was an agreement; that the person primarily responsible for negotiating it was his attorney, Mr. Schumacher. Arnold was asked about the terms of the agreement.[4] He answered that he was to receive a 15–year sentence if he testified truthfully at defendant's trial.

Arnold was asked if there were offenses he was charged with committing that would not be prosecuted. He acknowledged that the state agreed he would not be prosecuted for an attempted escape from custody. He also testified that he was to receive sentences of 7 years for the burglaries committed the day of the murder; that the sentences would be concurrent with the 15–year sentence he was to receive for his participation in the murder.

The "conflicts" alleged in the motion defendant filed in the trial court are that "Attorney Schumacher interviewed Larry Arnold at the Christian County Jail and obtained information from Larry Arnold which was detrimental to the interests of [defendant] and

---

**3.** Rule 22.07(c) requires "all papers in the proceeding" to be transmitted to the court having jurisdiction within five days after preliminary hearing is concluded. The transcript from the associate circuit judge division of the Christian County Circuit Court was filed in the circuit judge division of that court June 6, 1991, more than seven months after attorneys from the capital litigation section of the public defender's office entered appearances representing defendant.

This court infers, therefore, that defendant was represented at the preliminary hearing and all subsequent proceedings by attorneys other than Mr. Schumacher.

**4.** Larry Arnold and the state entered into a written plea agreement that was introduced in evidence as State's Exhibit No. 56. The exhibit was not filed with this court.

advantageous to the interests of Larry Arnold;" and "that [Mr. Schumacher's] dual representation constituted an actual conflict of interest and that conflict adversely affected his performance as counsel for [defendant]."

Mr. Schumacher testified at a pre-trial evidentiary hearing on defendant's motion. He testified that he represented Larry Arnold for some time; that his representation of Arnold terminated on the previous Friday (February 28, 1992) because he had ceased working for the public defender's office at that time.

Mr. Schumacher testified that when defendant was arrested, the Christian County associate circuit judge requested that he contact defendant and advise defendant of his rights. He said that he did this. He testified that he was uncertain if he actually entered his appearance as attorney for defendant; that because defendant was charged with a capital offense, another office would provide representation; that the local public defender's office notified the "capital office" of the pending charge. Mr. Schumacher did not remember discussing the facts of the case with defendant. He testified that he cautioned defendant not to make any statement about the case to anyone.

The record on appeal demonstrates no actual conflict of interest. There was no showing that the brief involvement of Mr. Schumacher in assisting defendant prejudiced defendant either during the time he consulted with defendant or afterwards.

 " 'Speculation, conjecture and surmise will not serve to fill' a void when a party fails to demonstrate why he was prejudiced by a claimed conflict of interest. [*State v.*] *Murphy,* 693 S.W.2d [255] at 261 [ (Mo.App. 1985) ]." *Chandler v. State,* 859 S.W.2d 764, 767 (Mo.App.1993). This court finds no manifest injustice or miscarriage of justice. Point II is denied.

**5.** Briefing principles applicable to civil cases apply to criminal cases, albeit that the rules governing appellate briefs are separately stated in Rules

*Point III*

In Point III defendant alleges the trial court erred by allowing the state, over his objection, to elicit evidence that defendant was involved in burglaries at the Steinert and Kreider residences and that he "may have been involved in an assault with Gregory Dodds." He contends the introduction of that evidence prejudiced his case and prevented him from receiving a fair trial.

 Although Point III identifies two burglaries and an assault as uncharged crimes about which evidence was admitted, the argument that addresses the point does not refer to the alleged assault. Where the argument portion of a brief does not refer to an alleged error set out in the corresponding point relied on, that portion of the appeal is deemed abandoned. *Mahaffy v. City of Woodson Terrace,* 609 S.W.2d 233, 237 (Mo. App.1980).[5] This court will consider only the allegation of error directed to evidence of defendant's involvement in the Steinert and Kreider burglaries.

The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). There are exceptions to the rule. Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992) (quoting *State v. Reese,* 274 S.W.2d at 307), and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. *State v. Mallett,* 732 S.W.2d 527, 534 (Mo. banc), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The balancing of the effect and value of evidence rests within the sound discretion of the trial court. *See State v. Shaw,* 636

84.04 and 30.06. *State v. Harrison,* 539 S.W.2d 119, 121 (Mo.App.1976).

S.W.2d 667, 672 (Mo. banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).

Generally, evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it " 'tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.' " *State v. Sladek,* 835 S.W.2d at 311 (quoting *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, 294 (1901)). The five enumerated exceptions have sometimes been difficult to define and apply. *State v. Sladek,* 835 S.W.2d at 314 (Thomas, J. concurring). Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant. *Id.* at 311–12.

*State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

▮▮ There was evidence that defendant and Larry Arnold formulated a plan to burglarize residences the afternoon of August 24, 1990, the day Mr. Haddow was killed. The Steinert and Kreider residences were located close to the Haddow residence. The evidence of defendant's participation in the burglaries and thefts from the Steinert and Kreider residences that day, together with evidence of his participation in the burglary at the Haddow residence, establishes a common scheme or plan embracing the three burglaries.[6] Proof of commission of any one of the burglaries tended to establish commission of the others and, consequently, proof that defendant participated in Mr. Haddow's murder. As such, upon the trial court determining the evidence was legally relevant, it was admissible under the common scheme exception.

▮▮ The evidence of the other burglaries was also admissible under another exception similar to the common scheme exception, the parallel exception. The parallel exception permits evidence of separate crimes to be admitted if they are part of a continuing occurrence intimately connected with the crime for which a defendant is being tried. *State v. Weatherspoon,* 728 S.W.2d 267, 272–73 (Mo.App.1987). "[T]he state is permitted to paint a complete and coherent picture of the crime charged and it is not required to sift and separate the evidence and exclude the testimony tending to prove the crime for which [a] defendant is not on trial." *State v. King,* 588 S.W.2d 147, 150 (Mo.App.1979). *See also State v. Criswell,* 907 S.W.2d 303, 305 (Mo.App.1995); *State v. Harper,* 855 S.W.2d 474, 477 (Mo. App.1993); *State v. Higdon,* 844 S.W.2d 99, 102 (Mo.App.1992); *State v. Robinson,* 834 S.W.2d 246, 249 (Mo.App.1992); *State v. Johnson,* 753 S.W.2d 576, 581 (Mo.App.1988).

The Haddow burglary was part of an ongoing course of conduct that included the Steinert and Kreider burglaries. The course of conduct began earlier that afternoon when defendant and Arnold formulated their plan to find rural residences to burglarize at locations where it was unlikely they would be discovered. It continued until the Haddow burglary occurred and Mr. Haddow was shot. As such, the Steinert burglary, the Kreider burglary and the Haddow burglary are linked together in point of time and circumstance so that one cannot be fully shown without proving the other.

Point III is denied.

*Point IV*

Point IV is directed to circumstances that arose during defendant's cross-examination of Sgt. John Prine. Sgt. Prine is a criminal investigator for the Missouri Highway Patrol. He was asked about an interview of Pam Bodin conducted by Missouri Highway Patrol Sgt. Jack Merritt at Highway Patrol Troop

---

**6.** Defendant relies on *State v. Lee,* 486 S.W.2d 412 (Mo.1972); *State v. Mathis,* 375 S.W.2d 196 (Mo.1964); and *State v. Garrett,* 825 S.W.2d 954 (Mo.App.1992), in support of his claim that the evidence of the Steinert and Kreider burglaries

should not have been admitted. In those cases, unlike this one, there was no common scheme or plan embracing the uncharged crimes and the ones for which the defendants in those cases were tried.

584

D Headquarters. Pam Bodin was Larry Arnold's girlfriend.

Sgt. Prine was asked whether Pam Bodin made a statement based on something Larry Arnold told her concerning the shooting of Mr. Haddow. Sgt. Prine answered:

I was in and out of that interview that was conducted by Sergeant Merritt. My understanding was that the incident that Pam Bodin was indicating that Larry Arnold had told her about an incident where [defendant] had hit a man in the head over a drug deal and that he had told, she said that he had told her about that. Then she asked to see Larry Arnold, they spoke for just a moment, probably no more than a minute, and then she indicated that yes, that Larry Arnold had told her about [defendant].

■■■ Defendant contends the trial court erred in failing to declare a mistrial *sua sponte* after Sgt. Prine's answer. He argues that Sgt. Prine's remark "was totally unrelated to the death of Russell Haddow, did not result in the filing of criminal charges or a conviction." Defendant acknowledges that no objection was made to the testimony at trial; that the matter was not preserved for appellate review.[7] He requests review for plain error as permitted by Rule 29.12(b).

■■■ "Unresponsive voluntary testimony which indicates that the defendant was involved in offenses other than the one for which he is on trial does not mandate the declaration of a mistrial." *State v. Miller*, 680 S.W.2d 253, 255 (Mo.App.1984). The circumstances in *Miller*, pursuant to which the court found no error in the trial court's failure to declare mistrial, are similar to those in this case in that there is no evidence that the statement about which defendant complains occurred by reason of a conscious effort by the prosecution to inject a prejudicial inference through Sgt. Prine's remarks. Further, as in *Miller*, the statement was made in the course of defendant's cross-examination. This court finds no manifest in-

justice or miscarriage of justice. There was no plain error. Point IV is denied.

*Point V*

■■■ Point V is directed to circumstances that arose during closing argument. Defendant contends the trial court erred "when it failed to declare a mistrial sua sponte after the state's prosecuting attorney made highly personalized, improper and prejudicial remarks during his closing argument"; that the remarks were "unsupported by the evidence, extended beyond the bounds of normal and proper argument and [were] calculated to excite, inflame and appeal to the emotions of the jury." Defendant did not request mistrial when the events about which he now complains occurred. He, therefore, requests plain error review.

Defendant's complaints are directed to two incidents when the prosecuting attorney represented to the jury that a particular witness was telling the truth; a statement to the jury that he believed Larry Arnold, and a remark that public defenders were told to "prosecute the prosecutor" when facts were against them.

In *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995), the Supreme Court of Missouri discussed requests for plain error review directed to events occurring during closing arguments. In declining to grant plain error review, the court said:

Plain error review "should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. banc 1990) (quoting, *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)). Relief should rarely be granted on assertions of plain error as to closing argument because, "in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v.*

---

7. "Failure to object at the earliest opportunity to the admission of evidence constitutes a waiver of the contention. *State v. Jackson*, 768 S.W.2d 614, 617 (Mo.App.1989). Absent an objection in the trial court, such a contention is not preserved for appellate review. *State v. Pospeshil*, 674 S.W.2d 628, 632 (Mo.App.1984)." *State v. Gregory*, 832 S.W.2d 526, 527 (Mo.App.1992).

*Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc 1988).

*Id.* at 670. The circumstances in *Silvey* are similar to those in this case. This court declines to review the issues defendant asserts in Point V for plain error. Point V is denied.

### Point VI

Point VI alleges the trial court erred in improperly defining reasonable doubt in instructions it read to the jury panel before voir dire and to the jury at the close of all evidence.[8] The definition of reasonable doubt that was read on both occasions was the one found in MAI–CR3d 304.04.

The definition of reasonable doubt set forth in MAI–CR3d 304.04 has been challenged on numerous occasions and upheld as passing constitutional muster. *See State v. Weaver,* 912 S.W.2d 499, 522 (Mo. banc 1995); *State v. Brown,* 902 S.W.2d 278, 287 (Mo. banc), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *State v. Chambers,* 891 S.W.2d 93, 105 (Mo. banc 1994). Point VI is denied.

### Point VII

Point VII is directed to defendant's appeal from the order denying his Rule 29.15 motion. Defendant contends the motion court erred in denying the motion because he received ineffective assistance of counsel. His claims of error are directed to several aspects of the representation he received at trial.

In order to demonstrate ineffective assistance of trial counsel, defendant must show that the attorneys who represented him in his criminal case failed to use the skill and diligence a reasonably competent attorney would have exercised under similar circumstances, and that he was prejudiced by reason of the breach of that responsibility. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

Defendant alleges his representation was deficient in four respects: failure to identify, investigate and call witnesses favorable to his case; failure to adequately advise him concerning his right to testify at trial; failure to secure services of a physicist to assist in preparing his defense; and failure to object to testimony by Sgt. John Prine and to closing arguments made by the prosecution.

*Investigation by Trial Attorneys*

Defendant contends his trial attorneys should have interviewed and called five persons as witnesses on his behalf—Darrell McCoy, Dan Herman, David Stout, J'Don Upham and Tyler Hogue. He also claims his trial attorneys were deficient in not obtaining jail rosters from the Greene County Jail where Larry Arnold was incarcerated in order to identify other prisoners who, he contends, could have provided evidence that Arnold confessed to being the person who shot Russell Haddow.

Stout, Upham and Hogue are not identified in defendant's *pro se* Rule 29.15 motion or his amended Rule 29.15 motion as persons whose testimony would have assisted in providing him a defense. To successfully raise the issue of whether failure to call a particular witness constitutes ineffective assistance of counsel, a motion for post-conviction relief must identify the allegedly absent witness. *State v. Shurn,* 866 S.W.2d 447, 470 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). "Claims of ineffective assistance of counsel raised for the first time on appeal following a post-conviction relief hearing are procedurally barred." *State v. Gray,* 887 S.W.2d 369, 386 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Glessner,* 918 S.W.2d 270, 282 (Mo. App.1996).

As to McCoy and Herman, neither testified at the evidentiary hearing on defendant's Rule 29.15 motion. "To establish that defense counsel was ineffective for failure to call witnesses, Defendant must prove that (1) the witnesses could have been located after

---

**8.** The definition of reasonable doubt read to the panel of prospective jurors at the beginning of voir dire was part of the information required by MAI–CR3d 300.02. The instruction on reason-

able doubt given after all evidence was presented was given as Instruction No. 4. It was patterned after MAI–CR3d 304.04.

reasonable investigation; (2) the witnesses would have testified if called; and (3) the testimony of the witnesses would have established a viable defense." *State v. Vega*, 875 S.W.2d 216, 219 (Mo.App.1994), citing *Harry v. State*, 800 S.W.2d 111, 115 (Mo.App.1990).

 Since they did not appear at the Rule 29.15 hearing, there is no way to ascertain what McCoy's and Herman's testimony may or may not have been. Defendant's speculation as to what their testimony might have been is not substantive evidence that his trial attorneys were ineffective in failing to obtain that testimony. *Harry v. State*, *supra*, at 115–16. "Mere speculation as to what that testimony might have been is not sufficient." *Id.* at 115.

 Defendant's complaint that his trial attorneys should have obtained jail rosters to identify persons who might have overheard statements made by Larry Arnold while he was incarcerated also fails. Defendant speculates that someone in jail may have heard Arnold make statements to the effect that he, rather than defendant, fired the shot that killed Russell Haddow. In addition to his complaint being speculative, even if there were witnesses to such an occurrence, the purpose served by their testimony would be impeachment of Arnold's trial testimony. "Witnesses who merely impeach the State's witnesses do not provide a movant with a defense to a charged crime." *Webster v. State*, 837 S.W.2d 585, 588 (Mo. App.1992).

Defendant's claims that his attorneys were derelict in failing to investigate and call persons he identified as potential witnesses and in failing to obtain names of prisoners incarcerated at the Greene County Jail when Larry Arnold was there are without merit.

*Defendant's Right to Testify at Trial*

Defendant complains his trial attorneys failed "to properly counsel [him] as to his constitutional right to testify in his own behalf." He contends this amounts to ineffective assistance of counsel.

 Defendant's lead attorney testified at the evidentiary hearing on defendant's Rule 29.15 motion. He stated that defendant wanted to testify during the trial of the criminal case; that they had "ongoing discussions" concerning the matter throughout the trial. The attorney recommended to defendant that he not testify. He went so far as to conduct a mock cross-examination of defendant to illustrate problems that his testimony could present. Part of the attorney's reasoning in recommending that defendant not testify was that the defense had successfully prevented the state from adding a witness by late endorsement whose testimony was believed damaging to defendant. If defendant testified, that witness would likely have been permitted to testify in rebuttal.

Defendant's trial attorney told the motion court that he made it clear to defendant, and he believed defendant understood, that the final decision concerning whether defendant testified was to be made by defendant. This is supported by the record from the trial in defendant's criminal case.

After the state rested in the criminal case, before defendant called his first witness, defendant's attorney made a statement to the trial court and inquired of defendant:

> Judge, the State has rested its case in chief and the defense has one witness, that witness is not the defendant and I want to just put on the record and I invite the Court to inquire that, I have discussed this matter thoroughly with [defendant] and he has come to the decision that he does not desire to testify and that he is waiving that right and is that essentially correct?

Defendant answered, "Yes."

The motion court found:

> It appears from the record that [defendant] made the decision not to testify on the reasoned and educated advice of an experienced trial attorney, who had considered the state of the trial at the time and the benefits and risks of putting the defendant on the stand. It was a matter of trial strategy, and [defendant] is entitled to no relief on this ground.

Its findings and conclusions are supported by the record. They are not clearly erroneous. Rule 29.15(k). Movant's claim that he received ineffective assistance of counsel because his trial attorneys did not adequately

advise him concerning his right to testify at his trial is without merit.

*Failure to Secure Services of a Physicist*

Defendant next complains that his trial attorneys rendered ineffective assistance of counsel because they did not engage the services of a physicist to evaluate certain evidence the state presented at trial and to present expert testimony. The state's evidence was a photograph that defenuant asserts was "taken at the crime scene on the day of Mr. Haddow's death, [that] depicts the location of the VCR and remote control."

The VCR is the one Larry Arnold said he was carrying when Mr. Haddow arrived home. Arnold testified he dropped it and a remote control in a hallway as he went toward the kitchen to leave the house. The photograph depicts a VCR sitting on a carpeted hallway. It appears to have been taken from the back side of the VCR. The remote control is shown on the floor a short distance—what would appear from the photograph to be a few inches—behind the VCR. The VCR appears to be nearer to the kitchen, the direction in which Arnold was headed, than the remote control.

Defendant argues that Larry Arnold's testimony that he dropped the VCR in the hallway as he was attempting to leave the Haddow residence would be refuted by testimony of a physicist concerning whether the VCR or the remote control unit would have travelled a further distance laterally after being dropped. He contends, and supports his contention by the deposition of a physicist, Dr. Larry Banks, that a physicist would testify "that an item with less mass will travel a farther distance than a heavier object that is released simultaneously."

 The motion court found, "The subject matter on which [defendant] says his counsel should have employed a physicist is not, in the context of this case, proper for expert testimony. The evidence was presented and argued by counsel and was within the experience and understanding of laypersons." That finding is not clearly erroneous.

 Expert opinion testimony is only admissible when it is clear that jurors are not able to draw correct conclusions from the facts proved because they lack experience or knowledge of the subject matter in question. *State v. Calvert*, 879 S.W.2d 546, 549 (Mo. App.1994). Defendant's claim that his trial attorneys did not provide effective assistance of counsel in that they did not secure the services of a physicist to evaluate this evidence and testify at trial is without merit.

*Failure to Object to Testimony and to Closing Argument*

Defendant contends his trial attorneys provided ineffective representation by not objecting to a non-responsive answer Sgt. John Prine gave to a question asked during his cross-examination, the response previously discussed with respect to Point IV.

Defendant's trial attorneys did not object to Sgt. Prine's response. Rather, the defense attorney cross-examining Sgt. Prine tried to get him to admit he knew his response was improper; that he was attempting to make statements detrimental to defendant to prejudice defendant before the jury. Later, after two other witnesses had testified, the state sought to recall Sgt. Prine. At that time defendant's attorneys moved for mistrial. The request was denied.

The motion court concluded that Sgt. Prine's answer was nonresponsive; that the attorney conducting his cross-examination considered objecting, knowing the trial court would have likely granted it. The motion court found that the trial attorney concluded, however, that if the trial court sustained such an objection and ordered the response stricken, the event would have been brought to the jury's attention to a greater extent; that it was unlikely the trial court would have granted mistrial. On that basis he chose not to object or to request mistrial.

The motion court found that defendant's attorneys pursued a theory that Larry Arnold had duped law enforcement officers and prosecuting officials into believing defendant was the actual killer. It concluded that the inquiry of Sgt. Prine, following his non-responsive answer, was intended to facilitate the contention that law enforcement officials shaped their investigation to fit that perception. It found defendant's attorneys "made a

conscious decision not to object to the non-responsive answer of a witness, and this decision was a matter of trial strategy"; that it did not constitute ineffective assistance of counsel.

 The fact that an attorney fails to object to everything objectionable does not demonstrate incompetence. *State v. Bailey,* 839 S.W.2d 657, 663 (Mo.App.1992). To afford a basis for collateral relief, "[t]here must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result." *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). The motion court concluded there was a rationale behind defendant's attorneys proceeding as they did in response to Sgt. Prine's statement; that ineffective assistance of counsel was not shown. The motion court's determination is not clearly erroneous.

Defendant's complaint that his trial attorneys did not object to portions of the state's closing argument is directed to a statement in which the prosecutor stated a witness was "completely convinced" that defendant shot and murdered Russell Haddow. He further complains about his trial attorneys' failure to object to comments "personalizing the evidence as to [the prosecutor's] beliefs and evaluation of the evidence." These statements related to a number of cases the prosecutor had tried in which death penalties were sought, and his perception of the strength of the case against defendant; techniques taught public defenders for use in defending cases; and a statement concerning the prosecutor's belief of Larry Arnold as the reason Arnold was not given a lie detector test.

Arguably, the statement concerning the lie detector was retaliatory to an invitation to tell the jury why a lie detector test was not given—part of Larry Arnold's negotiated plea agreement was that he would have taken one had the state requested. *See State v. Parker,* 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995) ("A defendant may not provoke a reply to his own argument and then assert error.") Regardless, as observed

in *State v. Tokar,* 918 S.W.2d 753 (Mo. banc 1996):

> In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*Id.* at 768.

The motion court found that the failure to object during closing argument to the statement about which defendant complains did not constitute ineffective assistance of counsel. That finding is not clearly erroneous. Point VII is denied.

The judgment of conviction in No. 18197 is affirmed. The order denying defendant's Rule 29.15 motion in No. 20592 is affirmed.

CROW, P.J., and SHRUM, J., concur.