STATE of Missouri, Plaintiff–
Respondent,

v.

Jeffrey Wade ROGERS, Defendant–
Appellant.

Jeffrey Wade ROGERS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 20060, 20873.

Missouri Court of Appeals,
Southern District,
Division Two.

March 5, 1997.

Judith C. LaRose, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Jeffrey Wade Rogers (defendant) was found guilty, following a jury trial, of six counts of sodomy, § 566.060.3,[1] and one count of incest, § 568.020. Following sentencing and incarceration, defendant filed a motion for post-conviction relief as permitted by Rule 29.15. Counsel was appointed and an amended motion filed. It was denied after an evidentiary hearing.

Defendant appeals the judgment of conviction and the order denying his Rule 29.15 motion. The appeals were consolidated pursuant to Rule 29.15(*l*) as it existed the date defendant's motion was filed. This court affirms the judgment of conviction as to all counts. The appeal of the order denying defendant's Rule 29.15 motion is dismissed.

■ Points I and II challenge the sufficiency of the evidence in No. 20060, the direct appeal in defendant's criminal case. Point III argues that the trial court erroneously denied two challenges for cause to prospective jurors. In considering allegations that evidence is insufficient to support guilty verdicts in criminal cases, this court views the evidence in the light most favorable to the verdicts. *State v. Wright*, 934 S.W.2d 575, 578 (Mo.App.1996). Evidence that supports the verdicts is regarded as true. *Id.* Contrary evidence is disregarded. *Id.* The evidence is sufficient if, considered in this manner, reasonable persons could find defendant guilty. *Id.*

Point I contends the evidence was not sufficient to show defendant committed any act of sodomy or incest during the time frame charged. The information alleged the acts were committed between May 1, 1992, and June 1, 1993.

■ "[T]ime is not of the essence in sex offense cases." *State v. Mills*, 872 S.W.2d 875, 878 (Mo.App.1994). The state is not confined to proving the particular acts charged occurred on precise dates stated in its information. *Id.* It is sufficient if it proves the alleged acts were committed on any day before dates specified in the information and within the period of limitation. *Id.* Defendant does not claim that the conduct attributed to him occurred beyond applicable periods of limitation.

Defendant was charged with committing acts of sodomy on six individuals, A.W.R. (Count I), L.J.S. (Count III), C.L.S. (Count IV), J.A. (Count V), T.J.B. (Count VI) and M.J.H. (Count VII). He was charged with committing incest with A.W.R. (Count II).

On June 6, 1993, Police Officer Randy W. Zimmerman received a report of possible sexual harassment involving A.W.R. After gathering information, Officer Zimmerman took A.W.R. into protective custody.

■ A.W.R.'s date of birth is April 6, 1982. He lived at an apartment on Colony Park Drive at the time he was taken into protective custody. A.W.R. described acts of sodomy that occurred between him and defendant. He testified that the acts of sodomy happened "[a] lot, lots of times." A.W.R. did not know how often the acts had been committed, but that they occurred "[m]ore than once a week." The last occurrence took place while A.W.R. and defendant lived at the apartment on Colony Park Drive.

A.W.R. testified that he lived with defendant at the apartment on Colony Park Drive for about a year before the time he talked to Officer Zimmerman, although he did not believe they had lived in the apartment during the whole school year before he was taken into protective custody. He and defendant moved to the Colony Park apartment from a trailer on Perkins Street. He was about 10 years old when they moved to the Perkins Street trailer. Before moving to the Perkins

---

1. References to statutes are to RSMo Supp.1991.

Street trailer, they lived in a trailer in Benton, Missouri.

A.W.R.'s testimony that the acts he described occurred more than once a week and that the last act took place at the Colony Park apartment was sufficient evidence from which the jury could have found beyond a reasonable doubt that acts of sodomy occurred between him and defendant between May 1, 1992, and June 1, 1993. There was sufficient evidence for the jury to have found defendant guilty of the offense of sodomy charged in Count I.

■ L.J.S.'s thirteenth birthday was August 14, 1992. Defendant gave him a tattoo on that day. He testified that defendant committed acts of sodomy with him during "the summer months, June, July, August" before his thirteenth birthday. Defendant moved to the apartment sometime after he gave L.J.S. the tattoo. L.J.S. described acts of sodomy between him and defendant that occurred both at the place defendant lived when he gave L.J.S. the tattoo and at the apartment where defendant moved after August 14, 1992. L.J.S.'s testimony was sufficient proof from which the jury could have found defendant guilty beyond a reasonable doubt of the offense of sodomy charged in Count III.

■ C.L.S.'s date of birth is April 24, 1982. He first met defendant when defendant lived at Benton. C.L.S. was 9 years old. C.L.S. testified that he was visiting Benton when defendant called him into defendant's bedroom. Defendant had no clothes on. Defendant had C.L.S. masturbate him. C.L.S. also told the trial court of other times when defendant lived at the other trailer when defendant engaged in anal sodomy with him.

C.L.S. testified that the last sexual act between him and defendant occurred when defendant lived in the apartment; that it was in defendant's back room at the apartment. T.J.B. also described an act of oral sodomy he observed between defendant and C.L.S. at the apartment. There was sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt of the offense of sodomy charged in Count IV.

■ T.J.B. testified about being in defendant's apartment with C.L.S. and A.W.R. T.J.B.'s date of birth is July 6, 1983. He described an act of oral sodomy defendant committed on him in the apartment. There was sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt of the offense of sodomy charged in Count VI.

■ J.A.'s date of birth is July 3, 1981. He had been a friend of A.W.R. for three or four years before the trial. He sometimes spent weekends with A.W.R. The first time he visited A.W.R. at the apartment, he and A.W.R. committed acts of oral sodomy with defendant. L.J.S., M.J.H. and T.J.B. were also there. Defendant told J.A., "Don't tell nobody." He saw defendant commit an act of oral sodomy on A.W.R. and an act of anal sodomy on M.J.H. There was sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt of the offense of sodomy charged in Count V.

■ M.J.H.'s date of birth is May 21, 1981. He and A.W.R. are friends. Their mothers are friends. He visited A.W.R. at the apartment on Colony Park Drive every week or two. He described acts of oral sodomy and anal sodomy defendant performed on him during these visits before he and the others talked to Officer Zimmerman in the summer of 1993. M.J.H. said other acts had been committed between him and defendant when defendant lived in the trailer down the street from the apartment and when he lived in a trailer in Benton. There was sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt of the offense of sodomy charged in Count VII.

Count II is the charge of incest. Section 568.020 states, in applicable part:

1. A person commits the crime of incest if he ... engages in sexual intercourse or deviate sexual intercourse with a person he knows to be, without regard to legitimacy:

(1) His ancestor or descendant by blood or adoption; or

.     .     .     .     .

2. For purposes of this section:

  .    .    .    .    .

(2) "**Deviate sexual intercourse**" means any act of sexual gratification between persons not lawfully married to one another, *involving the genitals of one person and the mouth, tongue or anus of another.*

  .    .    .    .    .

■ There was evidence of numerous acts of oral sodomy between defendant and A.W.R. between May 1, 1992, and June 1, 1993. A.W.R. is defendant's son, his descendant. Defendant had custody of A.W.R. as a consequence of the dissolution of his and A.W.R.'s mother's marriage. There was sufficient evidence for the jury to have found beyond a reasonable doubt that defendant committed incest as charged in Count II. Point I is denied.

Point II contends the trial court erred in denying defendant's *motion for judgment of acquittal at the close of all the evidence and in accepting the jury's verdict on Count V* because "the evidence was insufficient to prove beyond a reasonable doubt that [defendant] committed any acts of sodomy against [J.A.] as there was no evidence of what specific act or acts of sodomy [defendant] allegedly committed."

Section 566.060.3 provides:

A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old.

Deviate sexual intercourse is defined in § 566.010:

As used in this chapter:

(1) "**Deviate sexual intercourse**" means any sexual act involving the genitals of one person and the mouth, tongue, hand, or anus of another person;

  .    .    .    .    .

■ J.A.'s 11th birthday was July 3, 1992. He was less than 14 years old during the period May 1, 1992, through June 1, 1993. He is male; thus *defendant was not married to him.* He testified that defendant "was doing" oral sex to him and A.W.R. and, "Well, we was doing it to him too, . . . ." Al-

though J.A. gave no other description of the acts performed, there was testimony by L.J.S. about defendant's conduct with J.A. L.J.S. was asked the following questions and gave the following answers:

Q. Did you ever see anything happen between [defendant] and boys other than [J.L.] and [R.K.]?

A. Yes.

Q. And who was that, [L.J.S.]? Who else—who did you see something happen with?

A. [J.A.] and—[J.A.].

Q. What did you see happen with [J.A.]?

A. Him sucking [defendant's] penis.

Point II is denied.

Point III asserts the trial court erred in denying defendant's challenges for cause to prospective jurors Lisa Karnes and Sheila Pullen "in that Lisa Karnes said her instinct was to believe a child, and Sheila Pullen had been sexually molested as a child, thus indicating they were biased, and both of them served on [defendant's] jury."

■ "The trial court possesses broad discretion in determining the qualifications of prospective jurors, and its ruling on a challenge for cause will not be disturbed on appeal unless it constitutes a clear abuse of discretion and a real probability of injury to the complaining party." *State v. Feltrop,* 803 S.W.2d 1, 7 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Any doubt as to the trial court's findings is resolved in favor of the trial court in that the trial judge is in a better position to make the determination concerning a juror's qualifications than is an appellate court. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983). A determination of an allegation of bias or prejudice is essentially a question of credibility. *State v. Leisure,* 749 S.W.2d 366, 372 (Mo. banc 1988), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). It is primarily a question of demeanor. *Id.*

■ To qualify to serve as a juror, a person must be able to address the questions

presented with an open mind free from bias and prejudice. *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990). Determination of a juror's qualifications is made on the basis of the entire voir dire examination, not from a single response to one particular question. *State v. Gilmore*, 681 S.W.2d 934, 944 (Mo. banc 1984).

■ During voir dire Sheila Pullen stated she was sexually molested as a child by her grandfather; that it really disturbed her. She was asked a series of questions in private out of the presence of other prospective jurors. She was asked, "Can you, given that experience, do you feel you could sit and be fair in this case?" Ms. Pullen answered:

> I feel like I can. Even though I hold an awful lot against my family because they didn't believe me, but I feel like I really could and that I am mature enough to know that you have to go by evidence given and convict only on evidence.

She stated, in response to other questions, that she believed she could be fair and impartial, even though she expected to be nervous. She stated the belief that she could get beyond any effects of her experience by "using the mind, using the evidence, to get beyond that."

Defendant challenged Ms. Pullen for cause based only on her revelation of being sexually molested as a child. Considering all her answers to questions that were asked, this court finds no abuse of discretion by the trial court's denial of defendant's challenge of Ms. Pullen for cause.

■ Lisa Karnes was asked if she could be a fair juror in the case. She answered, "I would try. I think I could." Defendant's trial attorney continued, "Can you? You're modifying it. I know it's hard." Ms. Karnes replied, "Your instinct is to believe a child. If you have kids of your own, that's how you are."

Defendant argues that the trial court erred in denying his challenge for cause of Ms. Karnes. He contends she stated only that she "would try" to be a fair juror; that this was not enough for her to be permitted to serve.

After expressing an inclination to believe a child, defendant's trial attorney told Ms. Karnes, "And it's perfectly acceptable to hear a witness and believe them if you think you should." She answered that she had known a child who made a false allegation but later recanted. The defense attorney asked no more questions.

The statement that Ms. Karnes thought she could be a fair juror was not an equivocation, but the statement of her belief. A defendant who wishes to challenge a juror's stated belief has an obligation to follow up with questioning that would reveal an uncertainty concerning her ability to be fair and impartial. *State v. Moore*, 927 S.W.2d 439, 441 (Mo.App.1996). That was not done. The trial court did not abuse its discretion in denying defendant's challenge of Ms. Karnes for cause. Point III is denied.

■ All of defendant's points on appeal were directed to his appeal of the judgment of conviction in No. 20060. Although he filed a notice of appeal in his Rule 29.15 proceeding, he made no allegation of error nor argument directed to it. This amounts to abandonment of that appeal. *State v. O'Hara*, 928 S.W.2d 901, 902 (Mo.App.1996); *State v. Kendus*, 904 S.W.2d 41, 44 (Mo.App.1995).

The judgment of conviction in No. 20060 is affirmed. The appeal in No. 20873 of the order denying defendant's Rule 29.15 motion is dismissed.

MONTGOMERY, C.J., and SHRUM, J., concur.